BENSON *v.* GERLACH.

*(Supreme Court, General Term, First Department. December 29, 1890.)*

NOTE PROCURED BY FRAUD—RIGHTS OF INDORSEE.
    To entitle the indorsee of a note to recover thereon against the maker, where the evidence shows that the latter was induced to give the note by fraudulent representations, the indorsee must prove that he became a holder of the note for value and without notice. BRADY, J., dissents.

Appeal from circuit court, New York county.

Action by William Benson, as surviving partner of the firm of Benson & Brotherton, against Charles A. Gerlach. Defendant appeals from a judgment for plaintiff entered on a verdict directed by the court and from an order denying a motion for a new trial. For former report, see 4 N. Y. Supp. 273.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Hamilton R. Squier,* for appellant.    *C. G. Patterson,* for respondent.

DANIELS, J. The evidence was sufficient to justify a jury in concluding that the defendant was induced to give the note by means of fraudulent representations; and that subjected the plaintiff to the obligation of proving that himself and deceased indorsee became holders for value without notice, before a recovery could legally be directed in their favor. *Bank* v. *Green*, 43 N.Y. 298; *Harger* v. *Worrall*, 69 N.Y. 370. That proof was not given. Neither did the complaint allege that the note had been transferred to them for value, nor did the answer admit that to be the fact. That the fraud was reasonably well established has been shown by the opinion of Mr. Justice BRADY. And it was necessary, before a recovery could be directed, that this other proof should have been added. The exception to the direction of a verdict, as the case then stood, was well founded. The judgment, therefore, should be reversed, and a new trial ordered, with costs to the defendant to abide the result.

VAN BRUNT, P. J., concurs.

BRADY, J., (*dissenting*.) The action was brought to recover $1,633.34 and interest, being the amount of a promissory note made by the defendant to the order of S. P. Benson, and by him indorsed to the plaintiff's firm. The defense was that the note was obtained by the payee through fraudulent representations, and was without consideration as between the original parties to it. It appeared upon the trial—although the evidence relating to its development was objected to by the plaintiff's counsel upon the ground that the answer did not contain sufficient facts and circumstances to warrant the interposition of the defense of fraud—that Benson and Herdic were the owners of a franchise or patent for certain coaches, and of the right to run them in the city of Buffalo. To induce the defendant to become interested in a plan by which he was to organize a company in Buffalo for the use of the coaches mentioned, and their employment in that city, the plaintiff, Benson, the payee of the note, and Herdic represented to him that they were running 35 coaches a day in Washington, with an average income of nearly $400 a day from them, and they showed him a peculiar form of deposit slip which they claimed they were making use of in their deposits in the bank at Washington. This paper was shown to be false in every particular. It was never used, but was printed at the suggestion of Peter Herdic; as to which testimony was given by Mr. Eberly, the book-keeper of the bank at Washington, and which was corroborated by the evidence of A. C. West, and that of William Selby, a teller in the bank. It was also said by Benson, the payee, apparently for the same object, that they had organized a company at Elmira, giving its name. This statement was shown to be false, and consequently two distinct statements of fact, both calculated to impress the defendant with the value of the franchise mentioned for Buffalo, were made, and both of them were false. They were also of a character which the persons making them must have known were false. And all this was done under a pretense of very great friendship for Mr. Gerlach, towards whom Mr. Herdic, according to Mr. Benson's statement, had taken a great liking; the latter telling him, preparatory to the giving of the several notes, including the one in suit, that he was going to make him the richest man in Buffalo, and that it would not cost him a cent. This was said with a great show of interest, and in a spirit of enterprise rarely equaled, and never excelled, Benson telling the defendant that he and Herdic had been sitting up all night on the business, and also stating: "I never sleep. A young man like you ought never to sleep. I keep awake all night long." That interview, which was the result of a call by Mr. Benson, and so early that he awakened the defendant from his sleep, ended in the presentation of a paper by which the defendant said that he must give $5,000 for the priv-

ileges they were to bestow upon him in reference to the patent for the coach already mentioned; whereupon he asked, "What does this mean?" stating, "I am not worth five thousand dollars;" to which the answer was given: "I know that; I have got to go to California, and turn you over my property. If you don't organize the company, those don't amount to anything; your notes are no good; I know that. How do I know that you are not going to sell that out?" However, after a little parley, the notes were signed. In reference to them the defendant says that, in consequence of this interview between himself and Benson and Herdic, "I did not consider that they were of any value." After that it appears that the first further suggestion in regard to the note in suit was when the defendant received a notice of protest; whereupon he wrote to Benson, the payee, about it, and also saw Herdic in Buffalo after the note was protested, and had a conversation with him about the notes. He called his attention to the fact that the notes had become due, and that other notes had been given to take them up and renew them, and said, "What does this mean? Here comes one of these notes for collection;" whereupon Herdic said: "That is all right; that is a mistake." "And I said, 'Come to the bank,' and I introduced him to the cashier; and I said to him: 'This note has come through your bank for collection, and here is Mr. Herdic.' Mr. Herdic then said: 'That is all right; you send that right along.' I said: 'I am getting suspicious of you.'" And then the defendant says he went over to his office, and wrote a receipt, in which Herdic guarantied his heirs and assigns from any damage, which Herdic signed; and this paper was put in evidence, over the objection of the plaintiff's counsel to its receipt. It contains a recital of four notes, one being the note in suit, and also a pledge by Herdic for himself, his heirs and assigns, to obtain these notes, and return them to Gerlach, the defendant, without further charge. When the case was closed, this evidence, standing as stated, and no response being made to it, the defendant's counsel moved the court for a direction in favor of the defendant on the grounds stated, which was denied, and exception taken. He then asked the court to direct a verdict for the plaintiff on the whole case. That motion also was denied, and exception taken. He thereupon asked to be permitted to go to the jury on all the questions of fact in the case. The motion was denied, and exception duly taken. The plaintiff's counsel then moved that a verdict be directed in favor of his client for the amount of the note and interest; which motion was granted, and the defendant excepted. Assuming, for the purposes of this appeal, all the facts and circumstances stated to have been sufficiently established by competent evidence, they do not assist the defendant in escaping the responsibility incurred by making the notes; for the reason that the plaintiff on the evidence must be regarded as a *bona fide* holder without notice, and therefore unaffected by any of the facts and circumstances detailed. The same view was taken of this transaction in *Benson* v. *Garlach*, 4 N. Y. Supp. 273. The judgment must therefore be affirmed, with costs.